IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VERONICA DORATO, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF
DANIEL TILLISON, deceased

    Plaintiffs,

v.       1:14-CV-00365 JB-GBW

OFFICER MARTIN SMITH in his
official and individual capacities,
JOHN/JANE DOE SUPERVISOR
in his/her official and individual capacities,
and CITY OF ALBUQUERQUE,

    Defendants.

### PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF FOR SANCTIONS AGAINST DEFENDANT CITY OF ALBUQUERQUE AND DEFENDANT MARTIN SMITH FOR SPOLIATION OF EVIDENCE

COMES NOW the Plaintiff, by and through undersigned counsel and move this Court to enter an Order Imposing Sanctions against Defendant City of Albuquerque ("City") and Defendant Martin Smith ("Smith") for spoliation of evidence. Defendants' counsel was contacted as to whether they oppose this motion, but as of the time of this filing, Plaintiffs' counsel has had no response. Due to the nature of the Motion, Plaintiffs' counsel assumes Defendants oppose this motion. In support of this Motion and Memorandum of Law Plaintiff respectfully states as follows:

### I.     INTRODUCTION

This Motion and Memorandum of Law discuss the failure of the City to preserve important video evidence from a cell phone camera that was used to video the shooting of Daniel Tillison and the interactions that Mr. Tillison had with Defendant Martin Smith on March 19, 2012. Additionally, this Motion and accompanying Memorandum of Law discuss the failure of Defendant Martin Smith to preserve important video evidence by intentionally not having his lapel video on or his belt tape recorder on during the incident which is the subject of Plaintiff's Complaint. These

1

recordings would have definitively identified the sequence of events with respect to the issues regarding liability and damages. As the video evidence had not been preserved, Plaintiff has attempted to utilize deposition testimony, expert witness reconstruction, and documentary evidence to complete a sequence of events concerning the issues in this case. This has created a great deal of cost to be levied against the Plaintiff. However, Defendants will no doubt argue that the deposition testimony, expert witness reconstruction, and documentary evidence in this case are contradictory in many material aspects. Many of the discrepancies would have been resolved if the video evidence was preserved. The failure of the City and Smith to preserve this evidence after being put on notice of potential litigation and being specifically requested to preserve the video evidence has seriously prejudiced the Plaintiffs. Accordingly, Plaintiffs seek this Honorable Court to impose serious sanctions against the City and Smith for spoliation of this evidence.

## II.   FACTUAL BACKGROUND

The cell phone video was taken by Eric Selina who lived in the apartments across the street from the shooting. In his Affidavit, attached hereto as Exhibit A, Eric states that he began taking the video when he heard the cars crash outside the apartment. The video included sound, but the version that was played as part of the Channel 7 news story did not have sound, and it appeared that some parts of the video were cut out. He stated that he heard the officer say "put your hands out the window" and then immediately shot Daniel. Mr. Selina contacted Channel 7 and told them he had the video. Channel 7 came and interviewed him and made a copy of the entire video. Mr. Selina thereafter sold the phone, forgetting the video was on it, and contacted Channel 7 to request a copy of the original video for Daniel's family. He was advised that they had "lost" it, and that all they had was the news story which ran.

Defendants were on notice of the claim and request for preservation of documentation early on in this case as argued herein with greater specificity. Plaintiffs were originally under the

impression that the original video had been sent to channel 13 and as such subsequently subpoenaed the video from KRQE, Channel 13, to which no response was received resulting in Plaintiff filing a Motion for Order to Show Cause which was voluntarily withdrawn when Plaintiff became aware that the video footage sought was in possession of KOAT, Channel 7.  Plaintiff subpoenaed a copy of the original, unedited video from Channel 7 on August 6, 2014, at which time Channel 7 advised they no longer had the original video and that they only had the edited video that did not contain the entire interaction or sequence of events and was without sound and which ran with the news story. Plaintiff then requested a copy of the video from Defendants and was advised they did not have it. This, in spite of the fact that they had been served notice of the claim and request for preservation of documentation long prior to that date, and although the Supplementary Offense Report dated July 1, 2012, notes at page 10 that a witness description was "consistent with what was shown on the cell phone video obtained later in the investigation."  See Exhibit B at 10.  Additionally, at page 29 of the APD Supplementary Offense Report, there is discussion of the Channel 7 exclusive video and that it had been determined to hold "no evidentiary value".  *Id.*  In fact, even Defendant, Martin Smith, watched the video.  In his deposition, he stated "…there was somebody that had actually a camera that fed it to Channel 7 showing – I went up on the vehicle, cleared his hands.  His hands were clear.  I opened his door, and I pulled him out."  See Exhibit C, Deposition of Martin Smith at 55:21-25.  It is unknown what APD subsequently did with the video, however, it was not up to Officer Kleinfeld to determine what evidence was or was not valuable to the parties, and up to APD to maintain the integrity of all evidence.

      In another breach of protocol, not only did Defendant Smith fail to wait for back up officers (something he has frequently failed to do), he also failed to turn on his lapel camera or belt tape as required by APD.  Albuquerque Police Department General Order 1-39 - Use of Tape/Digital Recorders; Statement of Mark[sic] Smith dated March 20, 2012, at 13:18 – 14:6, Exhibit D.

Deposition of Martin Smith, Exhibit C at 20:23, 23:8–24:7, 53:11-13, 73:4-6, 74:4-8 (regarding backup), and at 61:24-62:3, 63:7-16 (regarding camera and tape). These failures only serve to magnify the culpability of APD and Defendant Smith for spoliation of evidence, as video and audio evidence would have shown the facts about what actually happened on that day.

### A. **Plaintiffs' Request to Preserve Video Evidence and APD's failure to do so**

On April 19, 2012, only thirty (30) days after the date of the incident, the Fine Law Firm sent a Tort Claims Notice to the City of Albuquerque. Additionally, attorney Ray Twohig served an IPRA Request on April 19, 2013, again putting CABQ on notice of the claim and requesting copies of documents, see attached hereto as Exhibit E. On March 21, 2014, Plaintiffs served, via hand-delivery, her Complaint for Civil Rights Violations on the City of Albuquerque [Doc 9-1]. On May 9, 2014, Plaintiffs' attorney Frances Carpenter sent a Request for Inspection of Public Records and preservation letter via first class mail to the New Mexico Department of Public Safety, Exhibit F. These documents put the City of Albuquerque on notice of litigation and requested that it preserve certain evidence including:

1. Any and all materials relating to any witness interviews concerning any aspect of incident, including reports, interview notes, transcripts, handwritten or typed statements, audio tape recordings, videotapes, digital recordings of any kind, summaries or other materials related to witness interviews;

2. Any and all lapel video, helmet video, audio recordings and belt tapes having anything to do with any aspect of the incident.

On May 27, 2014, Defendants provided Plaintiff with a "speed letter" authorizing the City of Albuquerque to allow Plaintiff's counsel to review all the evidence in this case. On May 28, 2014, Plaintiff's counsel provided that letter to APD Evidence with a request to review the evidence that date. APD Evidence did not have any of the aforementioned videos in its possession.

It is undisputed that the video footage was not preserved based on the Supplementary Offense Report at page 29 (Exhibit B). Additionally, Defendants, in their Response to Request for

4

Production No. 3, stated they were "not aware of any…videotapes…which have not been previously produced or identified by Defendants." Exhibit G.

### III.     ARGUMENT AND AUTHORITIES

Sanctions that this Honorable Court may impose based on spoliation of evidence include dismissal, the granting of judgment to party who was prejudiced, or an adverse inference instruction. A spoliation sanction is proper where: "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir.2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir.2007)). The entry of default judgment or the imposition of adverse inferences require a showing of bad faith. *Id.* (adverse inferences); *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir.2011) (default judgment). "Mere negligence in losing or destroying" evidence is not enough to support imposition of either of these harsh sanctions. *Turner*, 563 F.3d at 1149 (quoting *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1407 (10th Cir.1997)). Plaintiff submits that the most severe sanctions for spoliation of evidence are warranted as will be discussed herein.

Regarding the destruction of the cell phone video, Defendant City has the level of culpability required for the spoliation of evidence in their control. See *Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 591 (4th Cir.2001) (sanctioned party had access to evidence for his own investigation, but did not notify other party); *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir.1992) (listing culpability as a relevant factor in considering default judgment sanctions); *K–Con Bldg. Sys., Inc. v. United States*, 106 Fed. Cl. 652, 664 (Fed.Cl.2012) (government allowed a witness to remove documents, and the witness then caused those documents to be destroyed). In this case, Detective Kevin Morant received a copy of the original cell phone video from Channel 7 on March 27, 2012. See Exhibit B, Supplementary Offense Report at page 29. Once he had

possession of the video he watched it and forwarded the video to Criminalistics Detective M. Kleinfeld who viewed it and advised the "video had no evidentiary value". *Id.*

Albuquerque Police Department and its agents had exclusive jurisdiction over the investigation, and were entirely responsible for preserving the video as evidence and preventing its ultimate destruction. When Plaintiff requested copies of "all evidence" associated with the case on May 28, 2014, pursuant to the Speed Letter provided by the District Attorney's office, the documents received did not contain a copy of the videotape at issue.

New Mexico recognized the tort of intentional spoliation in *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 12, 120 N.M. 645 (overruled on other grounds by *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 23, n. 3, 131 N.M. 272).

> In order to prevail on an intentional spoliation of evidence theory, a plaintiff must allege and prove the following: (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages.

*Id.* Section 41-4-12 waives immunity if law enforcement officers, acting within the scope of their duties, cause a deprivation of any right secured by the laws of the state of New Mexico.

Plaintiff alleges that Defendant Smith, a law enforcement officer acting in the scope of his duties, intentionally destroyed evidence contrary to the law of the state of New Mexico, as set forth in *Coleman*. Plaintiff maintains that immunity is waived for intentional spoliation under Section 41-4-12.

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Oldenkamp v. United American Insurance Co.,* 2008 WL 4682226, at *2. (N.D.Okla., Oct. 21, 2008). A party seeking sanctions based on spoliation of evidence must establish: (1) that the party having control over the evidence had an obligation to preserve it; (2) that the records were destroyed with a

"culpable" state of mind; and (3) that the destroyed evidence was relevant to the movant's claims or defenses. *Id.* A party can only be sanctioned for destroying evidence that it had a duty to preserve and where the moving party was prejudiced by the destruction of the evidence. *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir.2007).

Defendants are expected to argue that no damages resulted from Officer Smith's actions because witnesses were interviewed and that he did not act with knowledge of a potential lawsuit when, in fact, Officer Smith testified in his deposition that the first phone call he made, immediately after the shooting, was to his attorney. (See Exhibit C, Deposition of Martin Smith at 92:22-25). Defendants do not rebut any fact that the records were destroyed with a "culpable[1]" state of mind; and that the destroyed evidence was relevant to the Plaintiff's claims or defenses.

## IV.     RELIEF REQUESTED

This Court has the inherent power to order various remedies for the destruction of evidence, which is separate and apart from criminal and civil remedies. *See Restaurant Management*, 1999-NMCA-101, ¶11. The remedies include ordering dismissal, a default judgment, excluding evidence, and an adverse inference jury instruction. *See Segura v. K-Mart Corp*., 2003–NMCA–013, ¶13 ("*Segura*") (holding defendant negligent as a matter of law for losing evidence at issue in slip and fall).

Based on Defendants' failure to preserve the video evidence, Plaintiffs request that this Court find that this failure amounted to the spoliation of material evidence and impose severe sanctions against Defendants commensurate with its misconduct which may include the following:

1. Striking the Answer of Defendants City of Albuquerque and Martin Smith, entering a Default Judgment in favor of the Plaintiffs and setting this matter for a hearing on damages, attorney fees, and costs;

---

[1] Definition of CULPABLE: Blamable; censurable; involving the breach of a legal duty or the commission of a fault. http://thelawdictionary.org/culpable/

2. Stipulation by Defendants that the Expert Report by Christopher Stewart who did the reconstruction of the forensic evidence provided by Defendant City is admissible and will be published to the jury thereby obviating the additional costs suffered by Plaintiff in having Mr. Stewart testify at the trial in this matter;

3. Jury instructions that inform the jury that Defendants were under a duty to preserve the video evidence, failed to preserve the video evidence and that the jury should find that the evidence would have been unfavorable to Defendants;

4. Any other applicable jury instruction that instruct the jury of Defendants' failure to preserve the video evidence when it had an obligation to preserve the video evidence and creates an adverse inference against Defendants;

4. Attorney fees and costs associated with the preparation and filing of this Motion; and

5. All such further relief which the Plaintiffs may be entitled.

Respectfully Submitted,

LAW OFFICE OF FRANCES CROCKETT, LLC

By: *Frances C. Carpenter*
Frances C. Carpenter
925 Luna Circle NW
Albuquerque, NM  87102
Ph: 505-314-8884
Fax: 505-835-5658
*Attorney for Plaintiff*

I hereby certify that a true and accurate
copy of the foregoing was served via
e-mail and the ECF system to all counsel
of record on this the 28th day of July, 2016:

*/s/ Frances C. Carpenter*
Frances C. Carpenter