IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VERONICA DORATO, as PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH CLAIM OF
DANIEL TILLISON, deceased

    Plaintiffs,

v.                                                    1:14-CV-00365 JB-GBW

OFFICER MARTIN SMITH in his
official and individual capacities,
JOHN/JANE DOE SUPERVISOR
in his/her official and individual capacities,
and CITY OF ALBUQUERQUE,

    Defendants.

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION AND MEMORANDUM OF LAW TO EXCLUDE THE EXPERT TESTIMONY OF CHARLES JOYNER

**COME NOW,** Plaintiffs, by and through their attorney, and hereby submit this as their Reply to Defendants' Response to Plaintiffs' Motion to Exclude the Defendants' police-procedures and training expert (Mr. Charles Joyner).

As shown in Plaintiffs' Motion and herein Mr. Joyner should not be allowed to testify at trial because his opinions do not meet the test for admissibility set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 or *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) in that his opinions are unreliable, speculative, not based in science and will not assist the trier of fact to understand or determine whether the force used by Defendant Smith against Daniel Tillison was unreasonable or unlawful.

Defendants do not state how Mr. Joyner's opinions will assist the jury in this case verses confuse them. As such, Plaintiff will again, and in addition to what was stated in her Motion, set forth that Joyner's opinions in this case are not based on anything more than speculation and will only afford confusion and prejudice to the case.

1

During the deposition Mr. Joyner admitted that he had never received training or had been found to be an expert in forensic reconstruction and does not know how to analyze Leika scans.  See Deposition of Joyner Doc. 197, Exhibit B, 16:20-25.  Mr. Joyner stated that there is an inaccuracy in Mr. Stewart's engineering report video because it depicts Smith standing stationary approximately the distance of the width of one parking space away from the moving SUV as Mr. Tillison drove the SUV backwards into the patrol car, and then forward into the wall. When questioned about how Mr. Stewart's report is inaccurate, Mr. Joyner explains that Mr. Stewart's report is different than what Mr. Smith says as well as some witnesses, failing to cite to which witnesses or which of Mr. Smith's statements to which he is making reference.  *Id*. at Exhibit B, 17:18-18:23.  In spite of having reviewed Plaintiff's expert's report, and in spite of the fact that Mr. Stewart used the actual Leika scans, measurements, and investigation prepared by APD in preparing his report, Joyner states he does not know what elements expert Stewart used to produce his videos and statements in his report and disagrees with them nonetheless.  *Id.* at 17:7-11.  Mr. Joyner admits that crime scene analysis is out of his area of expertise.  *Id.* at 22:19-23:5.  In spite of recognized and accepted scientific and forensic analysis which can determine the position of a shooter, Mr. Joyner states that he knows "for a fact" that you cannot determine from the casings and location of the casings the position of the shooter from other cases and his own experimentation.  *Id.* at 23:3-13.   At the same time, Joyner stated he did not disagree with the crime scene investigation and their findings, but again, that it was not his area of expertise.  *Id.* at 24:6-10.  Again his testimony only offers confusion for the jury.

When Mr. Joyner was asked what "science" he used to determine that Officer Smith would have been struck by the vehicle driven by Daniel Tillison, he stated "logic and having seen many vehicles move in reverse."  *Id.* at 18:24-19:9. Mr. Joyner then negates his own opinion by stating he actually doesn't even know if Mr. Smith was standing next to the car when

2

the car was placed in reverse the first time. *Id.* at Exhibit B, 19:10-15. The Court can easily see how a jury will be confused by such testimony by Mr. Joyner.

Mr. Joyner goes on to say that he does not know where Smith was standing and Mr. Smith doesn't know where he was standing when he shot Mr. Tillison when in fact Mr. Smith has stated exactly where he was standing multiple times when he shot. *Id.* at Exhibit B, 21:1-9. How can Mr. Joyner be expected to give any opinion regarding whether the shooting of Mr. Tillison was reasonable or not when he cannot even opine as to where Mr. Smith was when he shot Mr. Tillison?

Defendants arguments in rebuttal about this point is confusing as they admit on page 6 of their Response [Doc. 207 page 6] that "Plaintiff's own reconstruction expert does not even opine Officer Smith's exact location" and then they go on to cite where Mr. Stewart opines as to Smith's location. Defendants do not rebut the fact that their own expert – Joyner - admits that he doesn't know where Smith was standing. How can he then opine as to whether the use of force was reasonable? Defendants admit that Joyner talks about Smith's diagram. He speaks of this in the singular. The fact is that Smith made several diagrams. See Doc. 11-1 (Exhibit A1-A7) and Doc 26-5.

Defendants contend that Plaintiff's counsel mislead Joyner by stating that the 911 caller did not report the stereo was stolen. Plaintiff is confused by this as this is a true statement and even Defendants admit that this fact is not in dispute. See Exhibit A to Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. 30, Exhibit A]. It is clear and concerning that Joyner never even took the time to listen to the original 911 call.

Joyner <u>did not</u> review the training of Smith and he admits that he has not. See Joyner deposition attached hereto as Exhibit A at 42:16-43:8. After he proffered the aforementioned he and his counsel took a ten minute break after which time he came back into the room and stated

3

he did know about the training. See Doc 197-2 page 75:1-11. This is suspect at the very least. Furthermore, he was never given the actual training materials that Smith was trained on and only given what would have been "generally covered". See email from counsel dated May 2, 2016, attached hereto as Exhibit B. So when he states he knows how Smith was trained, this is in error. Defendants answers to discovery do not include the training materials and the records for Smith they produce only list classes and state "use of force" without any mention of whether he was trained in reactive control model or not. See Defendants Response to Request for Production Number 7 attached hereto as Exhibit C. Plaintiff can only assume that Defendant provided their expert –Joyner- with the same documentation as they gave Plaintiff. What is clear is that Defendants' expert relied on Defendants' counsel statements as to the use of force that may have been given to Smith. Nevertheless, Defendants then state that it is irrelevant because "alleged violations of standard operating procedures and training are irrelevant to the Fourth Amendment inquiry" citing *Mata v. City of Farmington,* 789 F. Supp. 2d 1215, 1234 (D.N.M. 2011). Defendants' response Doc. 207 at page 7. Defendants then state as their conclusion (Response at page 9 Doc. 207, page 9) that Joyner's opinions in regards to use of force and police tactics are proper because "expert testimony regarding the standard of care applicable to police officers in such areas as police tactics, use of force, administration, supervision and training are relevant to excessive force claims" citing *Zuchel v. City and County of Denver,* 997 F.2d 730, 738-41 (10th Cir. 1993).

Given Defendants admit that they believe that "expert testimony regarding the standard of care applicable to police officers in such areas as police tactics, use of force, administration, supervision and training are relevant to excessive force claims" it is curious as to why they then claim that Smith's mental and physical condition at the time of the shooting is irrelevant. Courts have held that it is relevant. *See Hutton v. City of Martinez,* 219 F.R.D. 164, 166–167

(N.D.Cal.2003) (finding an officer's medical records relevant to the officer's physical capabilities on the day of the shooting and also to any motive the officer may have had for shooting the victim rather than pursuing an alternative course of action); *Heilman v. Waldron*, 287 F.R.D. 467, 474 (D. Minn. 2012)(Plaintiff is entitled to obtain information about Waldron's use of such drugs or supplements because this information could be relevant to determining Waldron's physical strength on July 20 and the objective reasonableness of his actions); and *Mayard v. Siegfried,* Civ. No. 08–5853, 2011 WL 579334, at * 3 (D.Minn. Feb. 8, 2011) (finding relative size of officer relevant to excessive force claim).

      WHEREFORE, Plaintiff respectfully requests that the Court grant her Motion and Memorandum of Law in support thereof and exclude the expert opinion and report of Mr. Charles Joyner and any such relief that the Court deems proper.

      Respectfully Submitted,

      LAW OFFICE OF FRANCES CROCKETT

      */s/ Frances Carpenter*
      Frances Carpenter
      925 Luna Circle NW
      Albuquerque, NM 87102
      Phone (505) 314-8884; Fax (505) 835-5658
      frances@francescrockettlaw.com
      *Attorney for Plaintiff*

I hereby certify that a true and correct copy of the forgoing was served to all parties and counsel of record via the CM/ECF filing system this 26th day of August, 2016.

*/s/ Frances Carpenter*
Frances Carpenter